IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


HANK and DOLLY WILLMS,

                Appellants,

      v.

ROWE SANDERSON, III,

                Appellee.

No. 03:11-CV-818-HZ

OPINION & ORDER


David Z. Hostetter
Hostetter Knapp, LLP
203 E. Main St.
P.O. Box 400
Enterprise, OR 97828

       Attorney for Appellants

Lawrence W. Erwin
Law Office of Lawrence W. Erwin
221 NW Lafayette Avenue
Bend, OR 97701

       Attorney for Appellee


1 - OPINION & ORDER

HERNANDEZ, District Judge:

This matter comes before the Court on appeal from a judgment of the Bankruptcy Court for the District of Oregon in a Chapter 7 proceeding. Appellants Hank and Dolly Willms elected to have the appeal reviewed by this Court instead of the Bankruptcy Appellate Panel. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1). Appellee Rowe Sanderson III has also filed a cross-appeal in this matter.

## BACKGROUND

Plaintiffs Hank and Dolly Willms ("Willmses") are residents of Danville, California. Appellants' Br., 2. Defendant Rowe Sanderson III ("Sanderson") is an Oregon real estate developer. Id. In March 2002, the Willmses and Sanderson entered into an Option Agreement to develop 524 acres of property that the Willmses owned in Anderson, California. Appellants' Excerpt of Record ("ER")[1] at 76. In October 2006, Sanderson asked the Willmses to loan him $550,000 for operating capital. Appellants' Br., 2. Sanderson proposed giving the Willmses a security interest in a $1.5 million promissory note. Appellants' ER at 143. The promissory note was made payable to Sanderson from La Pine Village, LLC ("La Pine Village Note") and due on November 29, 2006. Id. On October 11, 2006, Sanderson executed a promissory note ("Willmses Note") to the Willmses for $550,000—although the actual amount loaned to Sanderson was $500,000. Id. at 107, 147. The Willmses Note was due 60 days later, on December 5th. Id. Sanderson failed to pay the Willmses Note on December 5th. Id. Yet that December, the Willmses twice more loaned Sanderson money: $125,000 on the 6th and

---

[1]The parties submitted excerpts of the record in support of their briefs. Excerpts will be identified as originating from Appellant or Appellee and abbreviated as "ER". Supplemental excerpts will be designated as "SER".

$375,000 on the 14th. Appellants' Br., 3. The Willmses had loaned Sanderson a total of $1 million.

In July 2007, Sanderson and the Willmses entered into a Modified Option Agreement. Appellants' ER at 62. The Modified Option Agreement defined benchmark payments for Sanderson to repay the three loans totaling $1 million and multi-million dollar loans with which Sanderson had encumbered the Willmses 524-acre property. Id. On August 27, 2007, Sanderson paid the Willmses $507,117.33. Id. at 4. The Willmses considered the payment as one of the benchmarks required in the Modified Option Agreement.[2] Sanderson thought otherwise. He considered payment as satisfaction for the Willmses Note, which concerned the first loan of $500,000. Sanderson requested the return of the La Pine Village Note, but the Willmses refused. Appellants' Br., 4. In October 2007, La Pine Village LLC was ready to pay the note in full. Id. On October 30th, Sanderson signed a letter of indemnity claiming that the La Pine Village Note had been lost, misplaced, or destroyed–even though he knew that the Willmses still possessed the note–and that title of the property could be reconveyed to La Pine Village LLC. Appellants' ER at 209. In doing so, the La Pine Village Note became worthless to the Willmses as security for their loan to Sanderson.

Sanderson filed for bankruptcy and the Willmses filed a complaint to prevent discharge of the first loan for $500,000. Id. at 3. If money is obtained by "false pretenses, a false representation, or actual fraud", then the debt will not be discharged. 11 U.S.C. § 523(a)(2)(A). The Willmses alleged that Sanderson induced them to loan the $500,000 with the security interest in the La Pine Village Note, but that Sanderson had no intention of using the La Pine Village Note proceeds to pay the Willmses. Appellants' ER at 102-03 ¶14. After trial on

---

[2] "On or before August 25, 2007, Sanderson shall pay to Willms the difference between the balance of the Willms Debt as of August 25, 2007, and the Willms Consolidated Loan Proceeds". Appellant's ER at 64 ¶6.

3 - OPINION & ORDER

October 10, 2010, the Bankruptcy Court made oral findings in favor of the Willmses on their fraud allegations. Id. at 253. Before judgment entered, on November 20th, Sanderson moved for a new trial and reconsideration based on newly discovered evidence. Id. at 253-54. Sanderson presented a document that showed a deposit to the Bank of the Cascades in the amount of $500,000 on August 27, 2007. Id. at 262. The document also indicated that Sanderson received the $500,000 via an escrow account at Amerititle and that the buyer was La Pine Village. Id. at 263. In his affidavit, Sanderson explained that he had found this document in personal files that he had picked up from his accountant. Id. The Bankruptcy Court allowed the evidence to be admitted despite the Willmses' argument that the evidence was not newly discovered. Appellants' Br., 5-6. Based on this evidence, the court reversed its oral finding that Sanderson had fraudulently induced the Willmses to loan the $500,000 with a promise to repay them from the La Pine Village Note. Appellants' ER at 265.

## STANDARDS

This Court reviews the Bankruptcy Court's conclusions of law de novo. See In re Federated Group, Inc., 107 F.3d 730, 732 (9th Cir. 1997) (citation omitted); see also In re Daniels-Head & Assoc., 819 F.2d 914, 918 (9th Cir. 1987). The Court reviews the Bankruptcy Court's factual findings under a "clearly erroneous" standard. See In re Triple Star Welding, 324 B.R. 778, 788 (9th Cir. BAP 2005); see also Fed. R. Bank. P. 8013. Finally, the Court reviews the Bankruptcy Court's exercise of its equitable power under an abuse of discretion standard. See In re Sasson, 424 F.3d 864, 867 (9th Cir. 2005).

## DISCUSSION

The Willmses appeal the Bankruptcy Court's decision to (1) grant Sanderson's motion to amend and for reconsideration of the post-trial evidence and (2) its denial of the Willmses'

4 - OPINION & ORDER

request for a new trial after the admission of the post-trial evidence. Appellants' Br., 1. Sanderson cross-appeals on the following issues, alleging that the Bankruptcy Court erred by (1) extending the deadline for the Willmses to file their 11 U.S.C. § 523 claim[3] and (2) denying attorney fees for Sanderson. Appellee's Br., 19-20. I will first address the issues presented by Appellants Willmses, and then those of Appellee Sanderson.

I.        Willmses' Appeal

   A.        Admission of Sanderson's Post-Trial Evidence

Following the Bankruptcy Court's oral findings after the trial, but before judgment had entered, Sanderson filed three motions: (1) motion for new trial under Rule 59, (2) motion to reopen the case and for reconsideration under Rule 60, and (3) motion to amend findings under Rule 52. Appellants' ER at 177. The Bankruptcy Court allowed the Willmses to submit countervailing evidence to oppose the motions. Appellants' ER at 53. The Willmses opposed the motion on the basis that the post-trial evidence was not new and that there was no manifest error of law to justify reversing the Bankruptcy Court's initial ruling. Id. at 191-93. Without further hearing, the Bankruptcy Court announced on March 8, 2011 that it would amend its findings under Rule 52(a) and admit the post-trial evidence. Id. at 55, 254.

The Willmses appeal the Bankruptcy's Court grant of the motion to amend or reconsider its ruling. I review this decision under the abuse of discretion standard. Weiner v. Perry, Settles & Lawson (In re Weiner), 161 F.3d 1216, 1217-18 (9th Cir. 1998) ("The bankruptcy court's decision on a motion to reopen or to supplement the trial record is also reviewed for an abuse of discretion."). "To warrant alteration or amendment of the court's decision the moving party must show: (a) manifest error of law and fact, or (b) the existence of newly discovered evidence which was not available [at] the time of the original hearing." Weiner v. Perry, Settles &

---

[3]Sanderson has stated two bases for this argument, but they both relate to this one issue.

5 - OPINION & ORDER

Case 3:11-cv-00818-HZ    Document 134    Filed 02/16/12    Page 6 of 10

Lawson, Inc. (In re Weiner), 208 B.R. 69, 72 (B.A.P. 9th Cir. 1997). To prevail on a motion due to newly discovered evidence, the movant must show the evidence (1) existed at the time of the trial or proceeding at which the ruling now protested was entered; (2) could not have been discovered through due diligence; and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case. Coastal Transfer Co. v. Toyota Motor Sales, 833 F.2d 208, 211 (9th Cir. 1987).

It is clear that the post-trial evidence existed at the time of trial and changed the disposition of the case. The more difficult question is whether the post-trial evidence could have been discovered by Sanderson with due diligence. Here, the Bankruptcy Court noted that "Sanderson did not act with appropriate diligence" to find the post-trial evidence. Appellants' Br., 54; see also 3/8/11 Mem. Op at Appellants' ER 263 ("[T]he Willms argue with some justification that Sanderson did not act with appropriate diligence".). Yet, due to both parties being "document challenged", the Bankruptcy Court allowed Sanderson's post-trial evidence into the record. Id. at 55. The Bankruptcy Court's own factual findings indicate the Sanderson was not diligent in presenting the evidence. The Willmses have also presented evidence that Sanderson requested a copy of the post-trial evidence from Amerititle on March 4, 2010–after Sanderson had been put on notice that the Willmses intended to file a § 523(a) complaint against him. Appellee's SER at 73 (Willmses granted an extension of time on February 26, 2010). Upon reversing its initial findings in favor of the Willmses, the Bankruptcy Court stated that because the post-trial evidence established that Sanderson used proceeds from the La Pine Village Note to pay the Willmses, it could not find in favor of the Willmses based on "a technicality". Appellants' ER at 58. Given the record before me, it was an abuse of discretion

6 - OPINION & ORDER

to allow the post-trial evidence into the record based on the argument that it was "new evidence". Without the post-trial evidence, the Bankruptcy Court's initial oral findings are restored.

B.  Denial of Willmses' Request for New Trial

The Willmses also appeal from the Bankruptcy Court's denial of their request for a new trial. However, the Willmses fail to articulate this argument in its briefing. The briefing is focused solely on the first issue for appeal—whether the post-trial evidence was newly discovered. Thus, I do not review the Bankruptcy Court's denial of a new trial.

II.  Sanderson's Cross-Appeal

A.  Extension to File a § 523 Claim

Sanderson argues that the Bankruptcy Court erred by allowing the Willmses to file their § 523 claim when the Bankruptcy Court *sua sponte* granted an extension of time and the Willmses never moved for an extension under FRBP[1] 4007(c) to file a § 523 claim.

As a preliminary issue, the Willmses argue that this Court is without jurisdiction to review this issue because the Bankruptcy Court entered judgment in favor of Sanderson, and thus he is not the "aggrieved party". Appellants' Reply[2], 11. Sanderson counters that this Court may affirm the Bankruptcy Court's dismissal of the Willmses' complaint on any ground supported by the record. Appellee's Reply, 2.

Only those persons who are directly and adversely affected monetarily by a bankruptcy court's order have standing to appeal that order. In re Fondiller, 707 F.2d 441, 442 (9th Cir. 1983). "This rule of appellate standing, the so-called 'person aggrieved' test, derives from section 39c of the Bankruptcy Act of 1898, which permitted appeal by a 'person aggrieved by an order of a referee.'" Id. (quoting 11 U.S.C. § 67(c) (1976) (repealed 1978)). Whether an

---

[1] "FRBP" refers to the Federal Rules of Bankruptcy Procedure.
[2] I have noted that the Appellants' combined response and reply brief was filed late. However, I decline to strike the brief or impose any sanctions.

appellant is a person aggrieved is a question of fact.  McClellan Fed. Credit Union v. Parker (In re Parker), 139 F.3d 668, 670 (9th Cir. 1998), superseded on other grounds in Dumont v. Ford Motor Credit Company (In re Dumont), 581 F.3d 1104 (9th Cir. 2009).

The Willmses are correct in that Sanderson was not the aggrieved party because the Bankruptcy Court's judgment did not adversely affect Sanderson's monetary interests. However, given my finding that it was error to allow the post-trial evidence, Sanderson consequently becomes the aggrieved party.  Sanderson now has standing to challenge the Bankruptcy Court's order allowing the Willmses to file a § 523 claim.

The Willmses had 60 days after the first meeting of creditors under § 341(a) to file a § 523 complaint against Sanderson.  FRBP 4007(c).  The first meeting of the creditors under § 341(a) occurred on December 15, 2009.  Appellee's SER, 4-5.  The deadline to file a § 523 complaint was February 16, 2010.  On February 16th, the Willmses filed a motion for an order "extending deadlines to file complaint objecting to discharge and motion to dismiss".  Id. at 6-7. The Willmses' motion was filed pursuant to FRBP 4004.  Sanderson argues that the Willmses requested the extension of time under the wrong procedural rule, and thus lost their chance to file a § 523 claim.  Appellee's Br., 23.

FRBP 4004 and 4007 are essentially the same.  Both rules set a 60-day deadline after the meeting of creditors under § 341(a) for a party to object to a discharge.  FRBP 4004, 4007.  The only difference is that FRBP 4007 specifically applies to § 523 claims (objection to discharge because money was obtained through fraud) while FRBP 4004 applies to § 727 claims (objection to overall Chapter 7 discharge).  Despite stating the wrong procedural rule, the Bankruptcy Court granted the Willmses an extension of time to file their § 523 claim against Sanderson.

8 - OPINION & ORDER

Appellee's SER, 22. The Bankruptcy Court reasoned that it was narrowing the Willmses' "extensive request" so that a more specific objection via a § 523 claim could be filed. Id. at 21.

In reviewing the Bankruptcy Court's decision to allow the Willmses an extension of time, I find no error. It is undisputed that the Willmses filed a motion for extension of time before the 60-day deadline had passed, whether under FRBP 4004 or 4007. The Bankruptcy Court was within its equitable powers to interpret the motion under FRBP 4004 as one that was brought under FRBP 4007. "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). There was no harm or prejudice to Sanderson because the deadline to bring a claim was the same under either procedural rule. I affirm the Bankruptcy Court's order regarding the extension of time for the Willmses to file a § 523 claim.

      B.      Denial of Attorney's Fees

Sanderson contends that the Bankruptcy Court applied the wrong legal standard in denying him attorney's fees. Appellee's Br., 40. Given my finding that Sanderson is not the prevailing party, this issue is moot.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CONCLUSION

Based on the foregoing, the judgment of the Bankruptcy Court is reversed in part in favor of Appellants, the Willmses. The post-trial evidence was not newly discovered and thus should not have been admitted. Judgment should be entered in favor of the Willmses in accordance with the Bankruptcy Court's initial oral findings.

IT IS SO ORDERED.

Dated this __16th__ day of February, 2012.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

10 - OPINION & ORDER